## James Campbell *against* Herbert Wallace.

Quære, whether parol evidence may be received, of a mistake made by the clerk of the peace of the county, in registering the name of a negro slave, the original return of the supposed owner being missing ?

INDEBITATUS *assumpsit* for 106l. had and received to the plaintiff's use. Pleas *non assumpsit,* and *non assumpsit infra sex annos,* and issues.

The case was this. The defendant, an inhabitant of that part of Westmoreland county, which was in 1781, erected by law into Washington county, sold to the plaintiff in 1787, a negro wench, named Beck, aged 16 years, and her child for 106l. The wench was sold as a slave, and was taken by the plaintiff into Ohio (now Brook,) county in Virginia, where she continued with him 11 or 12 years, and then under pretence of not being registered in Pennsylvania, left his service, and took with her five children, four of whom were born after the sale. She then went into the north western territory, but occasionally visited the plaintiff, with her children.

It appeared by the record of the clerk of the sessions, that the defendant, in December 1782, registered 20 negroes as slaves ; that Bess and Linn were among the number, then aged *respectively 11 years ; but no slave by the name of Beck was entered, nor could the written return be found in the office.          [*573

Mr. Campbell for the plaintiff, insisted, that this was conclusive evidence, that negro Beck was not entered as the act directs, whereby she became a free woman ; and that the consideration of the agreement having failed, the plaintiff was entitled to recover back his money. He cited Addis. 127, that want of title without eviction, may be given in evidence on a suit for lands sold ; also Cro. Jac. 474. Addis. 271.

Mr. Ross for the defendant, stated his defence ; and offered to prove, that at the time of the defendant's making his return

[Campbell v. Wallace.]

to the clerk of the peace of the county, he possessed negro Beck, and nineteen others as slaves, and that she was then eleven years of age. Some months previous thereto, he also owned negro Bess, as a slave, (who was 20 years of age,) and her two children, but had sold them *bona fide*, to William M'Mahon, in Virginia, and they had left his service before the time of making his return. The defendant employed his cousin to make out his return agreeably to the directions of the law, both males and females.

He further offered to prove by this cousin, that he made out such return, and included Beck and Linn therein, as aged 11 years respectively, writing the former name in the usual character of his hand writing, thus (Bectz,) and that the return so made out, was actually delivered to Thomas Scott, esq. clerk of the peace of the county within the time prescribed by law, together with the returns of slaves, belonging to Francis Wallace and John Hopkins, which appeared by the records to be duly registered.

The admission of this testimony was opposed by the plaintiff's counsel. In vain is the maxim, that a record imports absolute verity; in vain have the legislature prescribed all the particulars of the entry, of the name and surname, occupation or profession of the owner, his township and county, the names of the slaves, together with their ages and sexes, in order to ascertain and distinguish the slaves, if parol evidence can be received to destroy the effects of the registry. The precautions directed by the legislature, are too plain to be misunderstood. They intended, that what appeared on the face of the registry should conclude the supposed owner; and every legal presumption, is, that the public officer has faithfully discharged his duty. Here the faint recollections of memory are set in opposition to a written record, *and are introduced to annul its efficacy. If a deed is *574] recorded, or an entry made by the prothonotary of an agreement, the record is conclusive. The presumption of law is in favour of liberty, and the court will not go out of the beaten road, to establish the slavery of a helpless individual. The case of negro Lucy v. Reasen Pumfrey, (Addis. 380,) is expressly in point.

The defendant's counsel answered. The present is a case of a singular nature. The testimony is offered not to contradict the registry, but to shew that a mistake has happened in transcribing the return; and the entry as it stands, is naturally accounted for. Bectz might be readily mistaken for Beetz or Betz. An error in the officer ought not to be prejudicial to the slave holder, and strip him of his interests. This species of property is still protected by the law. The act for the gradual abolition of slavery, passed 1st March 1780, (1 St. Laws, 838,) prescribes in § 5, what shall be done by the owner of the slave, and what shall be done by the clerk of the peace of the county. If the

owner does what is incumbent on him, the act or omission of the clerk shall not injure him. Suppose such clerk in an outrageous fit of mistaken zeal for humanity, should refuse " to enter par- " ticulars, in a book to be provided for that purpose," of any return brought to him, will this manumit all the slaves in the county? Here there has been a return of the defendant's slaves; for they are registered. It is not our fault that the return is missing. It is the default of the public officers. We ought not to be affected by the loss. If it could be found, any mistake in the registry might be corrected thereby. We are then reduced to a secondary mode of proof, the means of establishing the error by the primary proof having been taken from us. If a warrant has been delivered to a surveyor to be executed, who neglects doing it, it is competent to the party to shew it in evidence, on a trial of the title. The material question to be tried, is, whether the owner, previous to the sale, duly returned his negro Beck, then aged 11 years, by reason whereof, he was entitled to dis- pose of her as a slave. In the case of negro Bute *v.* Townshend, tried in the Common Pleas in this county, parol evidence simi- lar to the present was received, and the master obtained a ver- dict. He was registered by the name of Cute.

YEATES, J. However hard the present case may be, it seems to me, that the parol evidence cannot be received, without in- fringing the rules of evidence, and introducing the greatest mis- chiefs. Records import absolute truths, and must be tried by themselves alone. They shall not be contradicted by witnesses *of the best credit. Gilb. Law Evid. 7. Co. Lit. 117, b. [*575 260, a. 3 Bl. Com. 24, 331. Bull. 221. 1 Rol. Ab. 757. 2 Bac. Ab. 309. At the same time, I admit, with the defendant's counsel, that if the written return could be had, which was made into the clerk's office, it would be received in evidence; and if it varied from the registry, it would controul the same. I ground myself on this, that the return is the original record, the registry but the transcript. It is similar to a deed recorded, which differing from the record thereof, the party shall not be prejudiced thereby. No insecurity or inconvenience will arise herefrom, because there is something of a permanent nature to amend by. I would liken this case to a judgment entered by a prothonotary, for fifteen pound. If the declaration and confession of judgment by the attorney, were for fifty pounds, I think this proof would be let in, and it would stand good for 50l. But if they were lost, no parol evidence would be received to shew the error of writing *fifteen* for *fifty*, and the party's remedy would be transferred to the officer. I perfectly agree with the opin- ion expressed by president Addison; yet I have no objection to hearing the evidence, putting the legal point into such a train, that it may be reconsidered again, if it shall become necessary.

SMITH, J. I am of opinion the evidence is admissible. I am well aware of the danger of such parol evidence, but all

[*Repsher v. Shane.*]

these things must be judged of according to the subject matter. The defendant could not have intended to enter negro Bess when he had sold her; besides, she was 20 and not 11 years old. Many persons do not write very legibly.    It has been often ruled, that if the substantial part of registering slaves is complied with, it is sufficient.    Under these impressions, I think the testimony should be received and judged of by the jury; but the point may be considered as reserved.

The evidence was accordingly received, and the facts stated were fully proved by two witnesses of reputation.    The jury found a verdict for the defendant.